

FILED & ENTERED

SEP 25 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | | | |
|---|---|---|---|
| In re: | Thomas Ernesto Merino, Debtor. | Case No.: | 2:18-bk-21250-ER |
| | | Adv. No.: | 2:18-ap-01460-ER |
| Star Rae Foreman, Plaintiff, v. Thomas Ernesto Merino, Defendant. | | **MEMORANDUM OF DECISION FINDING THAT PLAINTIFF IS NOT ENTITLED TO A JUDGMENT OF NON-DISCHARGEABILITY** | |
| | | **TRIAL:** | |
| | | Date: | July 27, 2020 |
| | | Time: | 9:00 a.m. |
| | | Location: | Ctrm. 1568 Roybal Federal Building 255 East Temple Street Los Angeles, CA 90012 |

## I. Introduction

On December 27, 2018, Star Rae Foreman ("Foreman") filed a *Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge* [Doc. No. 1] (the "Complaint") against Thomas Ernesto Merino ("Merino"). Before Merino sought bankruptcy protection, Foreman obtained a judgment against Merino in the amount of $10,114 in the small claims division of the Superior Court of the State of California (the "State Court Judgment"). The State Court Judgment was based upon Merino's breaches of his obligations as Foreman's landlord. Foreman alleges that the indebtedness established by the State Court Judgment is non-dischargeable pursuant to § 523(a)(2)(A) and (a)(6).

Trial was conducted on July 27, 2020. For the reasons set forth below, the Court finds that Foreman failed to carry her burden of proof with respect to her claims under § 523(a)(2)(A) and (a)(6), and will enter judgment in favor of Merino.[1]

## II. Procedural Background

On July 2, 2019, the Court granted in part and denied in part Merino's motion to dismiss the Complaint.[2] The Court dismissed Foreman's claims under § 727(a)(3) and (a)(4)(A) with prejudice. The Court held that the Complaint's allegations under § 523(a)(2)(A) and (a)(6) stated claims upon which relief could be granted.

Because Foreman and Merino proved unable to cooperate with respect to the preparation of a Joint Pretrial Stipulation, the Court ordered both parties to submit separate proposed Pretrial Orders.[3] On March 12, 2020, the Court entered a Pretrial Order based upon the separate proposed Pretrial Orders submitted by the parties.[4] The Pretrial Order scheduled trial for April 27, 2020.

On March 23, 2020, the Court continued the trial to July 27, 2020 as a result of the COVID-19 pandemic.[5] On June 17, 2020, the Court entered an order providing the parties notice that as a result of the pandemic, they had the option to appear at the trial either in person or by videoconference (the "Trial Procedures Order").[6] The Trial Procedures Order directed the parties to return attached ballots indicating whether they would appear at the trial in person or by videoconference, and informed the parties that a further order specifying trial procedures would be issued upon receipt of the ballots. Both Foreman and Merino returned ballots indicating that they would appear at the trial in person.[7] After receiving the ballots, the Court issued an order confirming that the trial would take place on July 27, 2020, and requiring Foreman and Merino to appear at the trial in person.[8]

On July 27, 2020, approximately one hour before the trial was scheduled to begin, Foreman sent to the Court via e-mail an emergency motion requesting a continuance of the trial (the "Motion").[9] The Motion was not served upon Merino. Foreman argued that a continuance was

---

[1] This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Civil Rule 52, made applicable to these proceedings by Bankruptcy Rule 7052. (Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.)

[2] Doc. Nos. 52 (ruling on motion to dismiss) and 55 (order on motion to dismiss).

[3] Doc. No. 68.

[4] Doc. No. 81.

[5] Doc. No. 83.

[6] Doc. No. 85.

[7] Doc. No. 87 (Merino's ballot) and 88 (Foreman's ballot).

[8] Doc. No. 89.

[9] The Motion was subsequently filed with the Court on July 30, 2020. Doc. No. 92.

required because "with the new stay home orders and the reverting of California to an earlier stage of reopening it is deemed unsafe to appear in person at a court hearing."[10]

Merino appeared at the trial in person. Foreman appeared at the trial by telephone and reiterated her request for a continuance. The Court denied the continuance, reasoning that Foreman could have appeared at the trial via videoconference had she so elected, and that a further continuance would prejudice Merino given that the pendency of this action continues to cast a cloud upon the scope of Merino's discharge. *See, e.g.*, *Willms v. Sanderson*, 723 F.3d 1094, 1100 (9th Cir. 2013) (stating that the timely resolution of nondischargeability complaints balances bankruptcy's competing goals of providing a fresh start for debtors and insuring that "relief intended for honest debtors does not go to dishonest debtors").

Prior to the trial, the Court issued an order fixing July 6, 2020 as the deadline for the parties to submit trial briefs, proposed findings of fact and conclusions of law, trial exhibits, a list of trial exhibits, and a list of witnesses (the "Trial Materials").[11] Neither party timely submitted any of the Trial Materials. On July 13, 2020, the Court issued a further order, again directing the parties to submit the Trial Materials.[12] Both parties disregarded this order and did not submit any Trial Materials.

During trial, Foreman attempted to introduce into evidence an exhibit by e-mailing it to the Court. The Court declined to consider the exhibit because Foreman had failed to submit it prior to the trial, notwithstanding having been ordered twice to do so, and because it had not been served upon Merino.

### III. Facts Established by the Pretrial Order

The following facts have been established by the Pretrial Order:

1) On July 1, 2016, Foreman rented an apartment from Merino (the "Apartment"). The Apartment was one of several units located at 1343 West 40th Place, Los Angeles, CA 90804 (the "Property"). The Property was owned by Merino's parents, German and Miriam Merino.
2) On May 30, 2017, Foreman filed an action against Merino in the Small Claims Division of the Los Angeles Superior Court (the "State Court Action"). The State Court Action alleged that Merino had failed to maintain the Apartment in a state of habitability and had harassed Foreman after she demanded that Merino take action to render the Apartment habitable.
3) At the time Foreman rented the Apartment from Merino, the Apartment was not in compliance with the requirements of the Los Angeles Municipal Code (the "LAMC"). The Apartment's non-compliance is established by a *Substandard Order and Notice of Fee* (the "Substandard Order") that was issued against the Property on July 27, 2017, by the Board of Building and Safety Commissioners of the City of Los Angeles. *See* Doc. No. 45 at pp. 27–30. The Substandard Order identified the following violations:

---

[10] Doc. No. 92 at 2. (Page citations are to the CM/ECF pagination appearing at the top of each page, not the pagination used by the document's preparer.)
[11] Doc. No. 83.
[12] Doc. No. 89.

      a) The Property is substandard due to illegal occupancy of the enclosed porch at the second floor and the accessory buildings as dwellings.
      b) The Property is substandard due to hazardous electrical wiring.
      c) The Property is substandard due to lack of adequate heating.
      d) Smoke alarms are missing or disabled.
      e) Carbon monoxide alarms are missing or disabled.
      f) Electrical permit required for the relocation of the main electrical panel.
      g) The accessory buildings were constructed and remodeled without the required permits and approvals.
      h) The water heater is not connected to a venting system as required by the LAMC.
      i) The yard is being used as a storage area in violation of the LAMC.

4) The Substandard Order required German and Miriam Merino to correct the violations.
5) At some time after renting the Apartment, Foreman demanded that Merino bring the Apartment into compliance with the requirements of the LAMC. Merino did not bring the Apartment into compliance with the requirements of the LAMC.
6) Trial of the State Court Action occurred on January 17, 2018. On that same date, the State Court entered judgment in favor of Foreman and against Merino, in the amount of $10,114.00 (consisting of damages in the amount of $9,999.00 and costs in the amount of $115.00) (the "State Court Judgment").

Pretrial Order at ¶ A.1–6.

## IV. Findings of Fact and Conclusions of Law
### A. Section 523(a)(2)(A)

Section 523(a)(2)(A) provides: "A discharge under section 727 … of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To except debts from discharge, a creditor has the burden of proof under the preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991).

To prevail on a § 523(a)(2)(A) claim on the grounds of false pretenses or false representation, a creditor must prove that:

> (1) the debtor made the representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; and
> (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

Foreman failed to carry her burden of proof with respect to her § 523(a)(2)(A) claim. First, Foreman did not introduce any evidence showing the basis for the State Court Judgment that she alleges is non-dischargeable. Without knowing the precise reasons for entry of the State Court Judgment, the Court cannot determine whether the State Court Judgment satisfies all the

elements of false pretenses or false representation as required for non-dischargeability under § 523(a)(2)(A). For example, if the State Court Judgment was based on actions occurring well after the inception of the rental agreement—such as harassment or a failure to maintain the Apartment's habitability that occurred several months into Foreman's tenancy—the Court could not necessarily find liability under § 523(a)(2)(A). Absent evidence of false representations made at the inception of the tenancy, a judgment based on Merino's actions several months into the tenancy would fall outside the ambit of § 523(a)(2)(A).

Second, Foreman's testimony was not sufficient to establish Merino's liability under § 523(a)(2)(A). Foreman testified that at some unspecified time after she rented the Apartment, she discovered that it was unpermitted. Foreman stated that when she rented the Apartment, she had the belief that it was permitted. However, Foreman's testimony did not establish that this belief was based upon representations made by Merino. Instead, Foreman's testimony showed that she had simply assumed that the Apartment was permitted because Merino had listed it for rental. Foreman testified:

> When I met with Merino, I had the belief that he was legally renting the unit, and that he had done his due diligence as a landlord, to make sure that a unit is up to code. As a landlord, it's his responsibility to know the code in Los Angeles….
> It is not the responsibility of the renter to check with code enforcement before moving into a unit. It's a good-faith belief that any unit that you sign a contract for to rent is legal. The only way that I would have known that it wasn't legal would be if I had been informed that this was not a legal living space.

Audio Record of Trial, commencing at timestamp 9:09.[13]

Foreman failed to establish that Merino made any misrepresentations regarding the Apartment's permitted status, much less that Merino knowingly made a false representation to induce Foreman to rent Apartment. Merino testified that he had no knowledge that the Apartment was unpermitted. The Court finds the testimony to be credible. Merino testified that the Apartment was located in property owned by his parents and that he listed the Apartment for rental only to assist his parents, who lived 90 minutes away and could not always attend to maintenance issues at the property. He stated that when there were issues at the property that he could not handle, his father would deal with them on the weekend. Merino further testified that after the litigation with Foreman commenced, he told his parents that his involvement with the property was causing more harm than good, and that he "washed [his] hands of any business to do with the property." Merino's testimony that he was unaware of permitting issues with the property is consistent with his testimony that he was involved in renting the Apartment only as a favor to his parents.

Foreman testified that at the time she rented the Apartment, Merino represented that it had adequate heat, when in fact the furnace was inoperative. Merino denied making any misrepresentations to Foreman regarding the furnace and denied that the furnace was not working. He claimed that another tenant sent him a picture of Foreman placing clothing on the top of the furnace. According to Merino, the tenant was upset, believing that Foreman was trying

---

[13] The Court did not order Foreman to file a transcript of the trial proceedings. All trial quotations are derived from the Court's transcription of the audio record of the proceedings, which is on file with the Clerk of the Bankruptcy Court.

to sabotage the furnace. Merino stated that the tenant turned off the furnace, and that he had to visit the property to turn the furnace back on. Merino acknowledged that at some unspecified point during Foreman's tenancy, the furnace was not working and had to be repaired. Neither parties' testimony was specific with respect to the dates during which the furnace was not working.

Merino is not liable under § 523(a)(2)(A) for misrepresentations regarding the furnace. First, Foreman did not prove that the furnace was not working at the inception of her tenancy. Foreman stated that the furnace was not working when she moved in, but did not introduce any evidence corroborating this claim.[14] Merino vigorously disputed Foreman's testimony regarding the furnace. The testimony was inconclusive as to the state of the furnace at the inception of Foreman's tenancy. Since Foreman carries the burden of proof, the inconclusive testimony must be resolved against her.

Second, even if the furnace was inoperative when Foreman moved in, Foreman did not establish that Merino told her the furnace was working when he knew this statement was false. As noted, Merino testified that he rented the Apartment to Foreman only to assist his parents, who owned the property. If indeed there were any issues with the furnace at the inception of Foreman's testimony, it is plausible that Merino was not aware of them.

**B. Section 523(a)(6)**

"Section 523(a)(6) excepts from discharge debts arising from a debtor's 'willful and malicious' injury to another person or to the property of another. The 'willful' and "malicious' requirements are conjunctive and subject to separate analysis." *Plyam v. Precision Development, LLC (In re Plyam)*, 530 B.R. 456, 463 (9th Cir. B.A.P. 2015) (internal citations omitted).

An injury is "willful" when "a debtor harbors 'either subjective intent to harm, or a subjective belief that harm is substantially certain.' The injury must be deliberate or intentional, 'not merely a deliberate or intentional act that leads to injury.'" *Id.* at 463 (internal citations omitted). An injury is "malicious" if it "involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir. 2002) (internal citations omitted).

In addition, the injury-producing conduct must be tortious in order to be excepted from discharge under § 523(a)(6). *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008). "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is only tortious if it constitutes a tort under state law." *Id.* at 1041.

Foreman testified that Merino repeatedly harassed and threatened her. Merino denied ever threatening or harassing Foreman.[15]

---

[14] The Pretrial Order established that the Apartment was not in compliance with the LAMC at the time Foreman moved in, but did not delineate the specific deficiencies that existed at that time.

[15] Harassment of a tenant by a landlord can be tortious under California law. Cal. Civ. Code § 1940.2 provides that a landlord shall not "[u]se, or threaten to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises … that would create an apprehension of harm in a reasonable person." Conduct by the landlord that interferes with the tenant's quiet enjoyment is tortious under appropriate circumstances. *Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 918–19, 162 Cal. Rptr. 194, 201 (Ct. App. 1980).

Foreman failed to carry her burden of proof with respect to her § 523(a)(6) claim. The testimony elicited at trial did not leave the Court with a clear picture of what had occurred. As set forth more fully below, Foreman's recounting of Merino's conduct was often vague and omitted the type of concrete details necessary to support a finding that Merino inflicted "willful and malicious" injury upon Foreman within the meaning of § 523(a)(6). Her testimony left the Court with more questions than answers as to what had actually transpired. As the plaintiff, Foreman bears the burden of proof, under the preponderance of the evidence standard, to establish her claim under § 523(a)(6). *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991). The Court must decide this matter based solely on the evidence presented at trial. It cannot fill in the gaps in Foreman's testimony based upon speculation as to what might have happened. The lack of specificity in Foreman's testimony requires the Court to find for Merino on Foreman's § 523(a)(6) claim.

Foreman testified that at some unspecified point during the tenancy, she received a notice from the City of Los Angeles instructing her that she was no longer required to pay rent because the Apartment was substandard. She stopped paying rent after receiving the notice. After Foreman stopped paying rent, she maintained that Merino's harassment "went from a level five … to a level twelve." The entirety of Foreman's testimony with respect to Merino's alleged harassment was as follows:

> For the counts of harm, in the time that I lived there, the Defendant [Merino] appeared at the property more than 100 times. On one occasion, he broke down the door of another tenant, because he was angry at that tenant for not paying rent, and he broke the tenant's door in half, when the tenant would not answer the door. Because of that, I went out and purchased a door for my own unit that I had been promised since the day I moved in but that had never been installed by the Defendant, in order to protect myself should he become angry with me, as he had already shown his temper was quite extreme. It was even more frightening, because when I arrived home to find a broken door in the yard, Mr. Merino seemed completely calm when I spoke to him, and did not even reference the broken door in the yard that had been taken off of the hinges from the other tenant, who now had no door into his living space.
>
> I received hundreds of text messages during this time from Mr. Merino, calling me evil. He told me I was going to go to hell. He moved his uncle in underneath me when one of the other tenants moved out, and that uncle would follow me around threatening me.
>
> I felt unsafe. I had to move my belongings to a storage facility, as multiple belongings were being stolen, and I found my belongings in the trash at one point. After moving my belongings into storage when I was away at a friend's house, they took the door down that I installed to keep my unit safe, disabled the security camera, and changed the locks to the building. So I was unable to retrieve the remaining belongings I still had at the unit. I had left the premises because I felt unsafe. I was worried that I was going to be hurt if I continued to stay at the premises, but I could not move out without losing my right to the recompense that his parents had been ordered to pay me to move.
>
> He was given a letter from—their family was given a letter from the city—stating that it was found that this unit is subject to rent control, and that he was required to continue to rent units, to register with rent control, at a certain fee per year. And because it was under rent control, whether or not it was a legal unit, they were required to give me a set

> amount from the city, from when you need to move due to the fact that your living unit is no longer habitable. This is something they never did. Instead, they started an eviction proceeding against me.
>
> The notice stated, specifically, that the amount of rent allowed to be collected on the unit was $0. I was instructed to pay them no more rent for the unit, because the city had told me not to pay rent.

Audio Record of Trial, commencing at timestamp 9:12.

Merino did not offer a point-by-point rebuttal to Foreman's testimony. He denied ever harassing Foreman, and stated that he left Foreman alone after she stopped paying rent. He also testified that after a certain point in Foreman's tenancy, Foreman refused to allow him or anyone else access to the Apartment to make repairs.

The Court finds that Foreman did not show, by a preponderance of the evidence, that Merino harbored a subjective intent to harm Foreman, or that Merino had a subjective belief that harm to Foreman was substantially certain as a result of his conduct.

1. Foreman's Testimony Regarding the Broken Door

Foreman's testimony was not sufficient to establish that Merino broke down another tenant's door as retaliation for the tenant's non-payment of rent. Foreman testified that she "arrived home to find a broken door in the yard," indicating that she was not present at the time the alleged incident took place.

Pursuant to Evidence Rule 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." A witness has "personal knowledge" of "a fact which can be perceived by the senses" only if she "had an opportunity to observe, and [has] actually observed the fact." Advisory Committee Note to Rule 602. Here, Foreman's testimony established that she was not present at the time Merino allegedly broke down the door. Foreman lacked personal knowledge of the events pertaining to the broken door, making her testimony regarding such events inadmissible. *See, e.g.*, *United States v. Lyon*, 567 F.2d 777, 783–84 (8th Cir. 1977) (stating that Rule 602 "excludes testimony concerning matter[s] the witness did not observe or had no opportunity to observe"); *New England Envtl. Techs. Corp. v. Am. Safety Risk Retention Grp., Inc.*, 810 F. Supp. 2d 390, 396 (D. Mass. 2011) (holding that "[e]vidence is inadmissible if the Court, in its discretion, determines the witness 'could not have actually perceived or observed that which [she] testified to'").

Not having been present at the time Merino allegedly broke down the door, Foreman's testimony could have been based only upon statements about the incident made to her by others. In addition to being inadmissible based upon Foreman's lack of personal knowledge, the testimony is also inadmissible as hearsay.

A showing by Foreman that Merino menaced and harassed another tenant by breaking the tenant's door would lend support to Foreman's § 523(a)(6) claim against Merino; such a showing would bolster Foreman's testimony that Merino also harassed her. However, since Foreman's testimony regarding the broken door is not admissible, the testimony does not corroborate Foreman's claim that she was repeatedly harassed by Merino.

2. Foreman's Testimony Regarding Text Messages

The entirety of Foreman's testimony regarding the text messages was as follows: "I received hundreds of text messages during this time from Mr. Merino, calling me evil. He told me I was going to go to hell." Foreman did not introduce any of the text messages into evidence.

As a result of her failure to introduce the text messages into evidence, Foreman did not carry her burden of showing that the text messages inflicted willful and malicious injury. The Court cannot find that Merino is liable under § 523(a)(6) based solely on Foreman's two-sentence description of the text messages. Not having been provided the opportunity to review the text messages, the Court is unable to assess the context in which the text messages were sent, the time period over which the text messages were sent, or the precise language used. Merino cannot be held liable under § 523(a)(6) in the absence of testimony and evidence establishing concrete facts supporting such liability.

3. Foreman's Testimony Regarding Harassment by Merino's Uncle

Foreman testified that Merino "moved his uncle in underneath me when one of the other tenants moved out," and that "the uncle would follow me around threatening me." The implication of this testimony is that Merino's uncle was harassing Foreman at Merino's behest.

Foreman's testimony lacked sufficient detail to support a finding that Merino permitted his uncle to live at the property as part of an elaborate plan to harass Foreman. Foreman did not explain how she concluded that the uncle's threats were coordinated with or directed by Merino. She offered no testimony ruling out the possibility that the uncle's behavior was motivated by animus toward her that was independent of Merino.

Even if the Court were to disregard these problems and impute the uncle's threats to Merino, the lack of detail regarding the nature of the threats forestalls a finding that they were "willful and malicious." Not every acrimonious landlord-tenant relationship rises to the level of non-dischargeability under § 523(a)(6). Specific testimony regarding the nature, duration, and extent of the threats would be necessary to support liability.

4. Foreman's Testimony Regarding the Theft of Her Property and the Lockout

Foreman's testimony was not sufficient to establish that Merino was responsible for the theft of her property. Foreman testified that "multiple belongings were being stolen" and that she "found my belongings in the trash at one point." Foreman testified that when she moved into the Apartment, she was advised that two other tenants were living in the back garage. (It was not clear from Foreman's testimony whether there were any other tenants in addition to those living in the garage.) Foreman did not explain why she believed that Merino was responsible for the theft, as opposed to one of the other tenants or even a third party not residing at the property.

Foreman testified that while staying at a friend's house, the door she had installed at the Apartment was removed and the locks were changed, preventing Foreman from retrieving her belongings from the Apartment. Several issues prevent the Court from imposing liability upon Merino in connection with this incident.

First, Foreman's testimony did not establish that Merino was responsible for the lockout. She testified that "*they* took the door down that I installed to keep my unit safe, disabled the security camera, and changed the locks to the building." Foreman's testimony did not specify the antecedent to the pronoun "they." As discussed in Section IV.A., above, both Merino and his father were involved in making repairs to the property, so it is possible that Merino's father could have been responsible for the lockout. Foreman offered no testimony demonstrating that it was Merino, rather than Merino's father, who was responsible for the lockout.

Second, it was not clear from Foreman's testimony whether the lack of access to her belongings was permanent or temporary. Shortly after stating that she could not access the Apartment, Foreman testified that she decided not to move out in order to avoid forfeiting her ability to seek an award of moving expenses from Merino's parents. Although Foreman's testimony was unclear, it appears that her access to the Apartment and her belongings was restored. Nothing in Foreman's testimony even hinted at the duration of the lockout. To be entitled to a finding in her favor under § 523(a)(6), Foreman was required to testify in much greater detail as to the events that transpired.

Third, even if the Court were to disregard Foreman's failure to establish that Merino was responsible for the lockout and the paucity of detail in Foreman's testimony, Foreman did not introduce any evidence as to damages. Therefore, a finding in Foreman's favor as to liability would be unavailing.

## V. Conclusion

Based upon the foregoing, the Court finds that Foreman failed to establish that the State Court Judgment is non-dischargeable pursuant to § 523(a)(2)(A) or (a)(6). The Court will enter judgment in favor of Merino and against Foreman.

###

Date: September 25, 2020

Ernest M. Robles
United States Bankruptcy Judge